IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| WHEELER ZAMICHIELI, | : | NO. 12-182 |
| Defendant. | : | |

<u>ORDER</u>

AND NOW, this 15th day of June, 2015, upon consideration of *pro se* Defendant Wheeler Zamichieli's "Motion to Dismiss Indictment" (Doc. No. 197), "Notice to the Court that the Government Has Omitted the 7/14/11 Unit Team Audio Recording from the Discovery Produced on December 8, 2014" (Doc. No. 202), "Second Motion for the Court to Review *In Camera* Discovery Materials Produced to the Court by the Government on 12/8/14" (Doc. No. 207), "Addendum in Support of the Motion to Dismiss Indictment" (Doc. No. 210), "Motion to Disqualify AUSA Virginia Paige Pratter and the U.S. Attorneys Within the Eastern District of Pennsylvania from the Matter" (Doc. No. 211), "Application for an Audio Expert Under the Criminal Justice Act" (Doc. No. 222), "Motion to Compel the Government to Produce to Defendant All Discovery Materials in Relation to Case Nos. 11-393, 12-182, in Order to File Motion for New Trial" (Doc. No. 223), "Second Addendum in Support of Motion to Dismiss Indictment" (Doc. No. 225), "Motion for the Court to Order the Government to Respond to Defendant's Second Addendum in Support of Motion to Dismiss Indictment" (Doc. No. 228), "Motion to Reserve Objections to Government's Response to Doc. Nos. 222, 223, and 233 Until Oral Argument on May 27" (Doc. No. 238), "Motion for the Courts' *In Camera* Inspection of Government's Bates Numbers 1-304" (Doc. No. 244), and "Objections to the Courts' May 26,

2015 Order" (Doc. No. 245), the Government's responses thereto (Doc. Nos. 218, 236), and

Defendant's "Objections to Government's Response to Defendant's Pro Se Motions" (Doc. No.

239) and "Reply to Government's Response to Defendant Docket No. 222" (Doc. No. 242), it is

hereby ORDERED that Defendant's motions and applications (Doc. Nos. 197, 207, 210, 211,

222, 223, 225, 228, 238, 244) are DENIED.

I.      Introduction

Our Order of July 10, 2014 (Doc. No. 155) provided a thorough summary of the factual

background and procedural history of this case, which we need not restate here. In this Order, we

assess the many post-trial motions that Defendant has filed since January 2015, except those

motions that this Court has already addressed. We first consider Defendant's motions seeking

dismissal of the indictment, which Defendant styled as one Motion to Dismiss Indictment, two

addenda in support of this motion, and one motion requesting a response from the Government

(Doc. Nos. 197, 210, 225, 228). We next address Defendant's motion to disqualify members of

the U.S. Attorney's Office (Doc. No. 211), followed by Defendant's application for expert

services (Doc. No. 222). Finally, we consider Defendant's various motions requesting *in camera*

review and seeking discovery materials (Doc. Nos. 207, 223, 244), as well as Defendant's

remaining motion to reserve objections (Doc. No. 238). We deny each of Defendant's motions

and applications in turn.

II.     Defendant's Motion to Dismiss Indictment and Subsequent Addenda (Doc. Nos.
        197, 210, 225, 228)

Defendant filed his Motion to Dismiss Indictment on January 6, 2015 (Doc. No. 197).

Defendant does not allege any inadequacy of the indictment on its face. Rather, Defendant

appears to argue that we should dismiss the indictment based on various forms of prosecutorial

misconduct. In particular, Defendant argues for dismissal of the indictment on the bases that (1)

the Government violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by withholding evidence from him, (2) the Government engaged in "outrageous misconduct," and (3) the Government vindictively and selectively prosecuted him. (Def.'s Mot. to Dismiss 1.) We conclude that dismissal of the indictment is not warranted.

We note at the outset that Defendant's motion is likely untimely, as Federal Rule of Criminal Procedure 12(b)(3) provides that certain claims and defenses, such as "selective or vindictive prosecution," "suppression of evidence," and "discovery under Rule 16," "must be raised by pretrial motion if the basis for the motion is then reasonably available." Fed. R. Crim P. 12(b)(3). Rule 12(c)(3) further instructs that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). As Defendant did not file any pretrial motions to dismiss the indictment, he may have waived the claims presented in the instant motion. <u>See</u> <u>United States v. Lockett</u>, 406 F.3d 207, 212 (3d Cir. 2005). Defendant asserts, however, that his claims are based on newly discovered evidence such that the bases for this motion were not reasonably available before trial and Defendant had good cause for failing to raise the claims earlier. (<u>See</u> Def.'s Mot. to Dismiss 4, 6.) Accordingly, out of an abundance of caution, we consider Defendant's claims on the merits. <u>See</u> <u>United States v. Williams</u>, 591 F. App'x 78, 87 (3d Cir. 2014).

In general, a district court may dismiss an indictment on the basis of prosecutorial misconduct only where the defendant was prejudiced by this misconduct.[1] <u>Bank of Nova Scotia</u>

_____

[1] The Third Circuit recently recognized "that it is unfair to the government when a defendant brings a post-trial attack on the sufficiency of the indictment," and the court accordingly imposed a high bar for dismissal of a post-trial indictment. <u>Williams</u>, 591 F. App'x at 87. Although Defendant in this case does not challenge the sufficiency of the indictment, as he instead alleges prosecutorial misconduct, it may still be appropriate for this Court to apply a higher standard for this post-trial motion than we would apply to a similar pretrial motion. Yet we find that Defendant has not even met the standard typically applied in evaluating a pretrial motion to dismiss an indictment

v. United States, 487 U.S. 250, 263–64 (1988). "The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." Id. In other words, "[a]n indictment will only be dismissed on the basis of prosecutorial misconduct in front of a grand jury if the defendant suffers actual prejudice." United States v. Polin, 824 F. Supp. 542, 548 (E.D. Pa. 1993). We will discuss each of Defendant's specific claims.

### A. Withholding Evidence

Defendant's argument that the Government unlawfully withheld evidence in violation of Brady does not merit dismissal of the indictment. Defendant first argues that the Government failed to disclose photographs that Special Agent Patrick Henning allegedly took of Defendant's car. (See Def.'s Mot. to Dismiss 11.) Defendant also contends, as he has repeatedly asserted throughout this case, that the Government has withheld a recording of a telephone call that Defendant allegedly made from his Federal Detention Center ("FDC") case manager's office on July 14, 2011. (Id. at 5.) Defendant claims that this recording would prove exculpatory because Santina Simmons, Defendant's then-girlfriend, allegedly informed Defendant during that phone call that neighbors had observed Agent Henning searching Defendant's vehicle on July 13, 2011. (Id.)

The Supreme Court held in Brady v. Maryland that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. The Supreme Court has further established that evidence is considered "material only if there is a reasonable probability that,

---

on the basis of prosecutorial misconduct. We therefore need not explore whether a higher standard is appropriate in this case.

had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). In other words, "the touchstone of materiality is a 'reasonable probability' of a different result." Johnson v. Folino, 705 F.3d 117, 128–29 (3d Cir. 2013) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Thus, "[n]o denial of due process occurs if Brady material is disclosed to [a defendant] in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983).

With respect to the photographs of Defendant's car, Defendant acknowledges that the Government produced these photographs to him on January 29, 2013, nearly a month before the trial in the instant case. (See Def.'s Mot. to Dismiss 5; Gov't's Resp. Def.'s Mots. 9, Doc. No. 218.) As such, no misconduct occurred regarding disclosure of the photographs that might have prejudiced defendant. Cf. Higgs, 713 F.2d at 44 (holding that defendants' due process rights were not violated where the government disclosed potential Brady material on the day that government witnesses were set to testify).

Regarding the alleged telephone call recording, the Government maintains that such a recording does not exist because the FDC does not record telephone calls made from case managers' offices. (Gov't's Resp. Def.'s Mots. 11.) Even if such a recording did exist, we would nevertheless find that the Government's failure to disclose the recording to Defendant did not constitute prosecutorial misconduct from which Defendant suffered actual prejudice. First, Defendant presents this claim in a motion to dismiss the indictment, which would ordinarily focus on behavior before the grand jury. Yet Defendant argues only that the Government unlawfully withheld the recording from him; he does not allege any misconduct before the grand jury. (Def.'s Mot. to Dismiss 4.) Second, even if we were to construe Defendant's motion as asserting that the prosecution engaged in misconduct in neglecting to present the recording to the

grand jury, "the prosecution is not obligated to search for and present exculpatory evidence to a grand jury." United States v. Litman, 547 F. Supp. 645, 649 (W.D. Pa. 1982).

Finally, to the extent that a Brady violation itself might warrant dismissal of an indictment, we find no such violation here. Defendant asserts but fails to prove that the recording would in fact contain exculpatory evidence. (Def.'s Mot. to Dismiss 6.) Indeed, Defendant's argument that Agent Henning illegally searched his car on July 13, 2011 has already been thoroughly considered and rejected by this Court. We held a series of two suppression hearings on this matter in January 2013, and we determined on the record that no such search occurred. (Order of Dec. 1, 2014, Doc. No. 184 (citing Tr. Mot. to Suppress Hearing, Jan. 30–31, 2013 46:9–12).) This Court will not permit Defendant to relitigate this issue. See Waldorf v. Shuta, 142 F.3d 601, 616 n.4 (3d Cir. 1998) ("Under the law of the case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case."). Moreover, Defendant has not demonstrated that the prosecution's alleged failure to present the recording to him or to the grand jury caused him any prejudice or had any effect on the grand jury's decision to indict or the jury's decision to convict. See United States v. Hill, 976 F.2d 132, 139 (3d Cir. 1992). Dismissal of the indictment is not warranted on this basis.

B. Outrageous Government Misconduct

As for Defendant's argument for dismissal based on "outrageous government misconduct," Defendant contends, among other things, that "the firearm in the instant indictment was in the possession and/or control of Agent Patrick Henning. Santina Simmons[,] under duress and control of Henning, entrapped Defendant by using Simmons to transfer the firearm to Hokeem [sic] Harris." (Def.'s Mot to Dismiss 11.) Defendant also argues once again that Agent Henning illegally searched Defendant's vehicle on July 13, 2011 (id. at 11–12), notwithstanding

our previous determination on the record that this search did not occur (see Order of Dec. 1, 2014 (citing Tr. Mot. to Suppress Hearing, Jan. 30–31, 2013 46:9–12)). In addition, Defendant argues that the Government's alleged failure to disclose evidence constitutes outrageous government misconduct. (See Def.'s Mot. to Dismiss 11, 15.) Finally, Defendant claims that Agent Henning committed perjury before this Court by testifying that he did not recall if there were other people on the block when he took photographs of Defendant's vehicle, and Defendant contends that the Government permitted this alleged perjury to occur without objection. (Id. at 16.)

"[T]he doctrine of outrageous government misconduct, although often invoked by defendants, is rarely applied by the courts." United States v. Voigt, 89 F. 3d 1050, 1065 (3d Cir. 1996). In fact, "the viability of the doctrine is hanging by a thread." United States v. Nolan-Cooper, 155 F.3d 221, 230 (3d Cir. 1998). To the extent that the doctrine still exists, the relevant inquiry is whether, under the totality of circumstances, the government's conduct was so "shocking, outrageous, and clearly intolerable" that it offends due process. Id. at 233 (quoting United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992)); see also United States v. Lakhani, 480 F.3d 171, 180 (3d Cir. 2007) ("We have said that this principle is to be invoked only in the face of 'the most intolerable government conduct.'") (citation omitted). The defendant bears the burdens both of production and of persuasion on his outrageousness claims. Voigt, 89 F.3d at 1070.

In this case, Defendant presents no support for any of his claims of misconduct, including his theory that Agent Henning in fact possessed the firearm that Defendant was convicted of possessing. In addition, Defendant's claims do not allege "conduct that shocks the conscience." Rochin v. California, 342 U.S. 165, 172 (1952). Defendant's arguments that the Government

failed to produce evidence and that Agent Henning lied when he stated that no one was nearby when he photographed Defendant's vehicle fall far short of the relevant legal standard. Accordingly, we deny Defendant's request to dismiss the indictment on the basis of outrageous government misconduct.

### C. Selective and Vindictive Prosecution

Defendant next argues that because a criminal case against Defendant before the Honorable Judge Schiller was previously dismissed, "the Government harbored a personaal [sic] vindictiveness towards[] [Defendant] for exercising a legally protected right under the Fourth Amendment, before Judge Berle M. Schiller. After a successful suppression hearing and dismissal of indictment, more serious charges followed by the Government." (Def.'s Mot. to Dismiss 25 (citation omitted).) He thus argues for dismissal of the indictment in this case based on vindictive prosecution. He also asserts that he was the victim of selective prosecution, as "Santina Simmons and Lamont Jake MCneal [sic] was 'similarly situated' in the charged indictment of Defendant but was not prosecuted. Simmons, McNeal, and Harris received disparate treatment, which is a product of decisions based on some unjustifiable standard or arbitrary factor." (Id. at 29.) Defendant's claims of vindictive and selective prosecution overlap substantially: he contends that "[t]he Government harbored a personal vindictiveness towards the Defendant for exercising a Fourth Amendment Right [sic] before Schiller, and was willing to let others go free, just to convict the Defendant." (Id.)

"Prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights." United States v. Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982)). "There is no prosecutorial vindictiveness, however, where the prosecutor's decision to prosecute is based on the usual

determinative factors." Id. (citing United States v. Oliver, 787 F.2d 124, 126 (3d Cir. 1986)). A defendant may show prosecutorial vindictiveness in two ways: "(1) by producing evidence of actual vindictiveness; or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." United States v. Korey, 614 F. Supp. 2d 573, 582 (W.D. Pa. 2009). Regarding the latter, a defendant may raise a presumption of vindictiveness when the prosecutor brings more serious charges against the defendant, "based upon the same underlying conduct, after the defendant has successfully exercised his right to appeal the conviction of a lesser charge." Id. (citing Blackledge v. Perry, 417 U.S. 21 (1974)). However, "[t]he mere fact that [a] defendant was subsequently indicted after he arguably exercised a legal right is insufficient, in and of itself, to establish a vindictive prosecution claim." United States v. McKay, No. 3:12-CR-324, 2013 WL 2393002, at *6 (M.D. Pa. June 3, 2013); see also United States v. Baskerville, No. 03-836, 2007 WL 150439, at *2 (D.N.J. Jan. 17, 2007) ("Prosecutorial vindictiveness is not established simply because a defendant exercised a legal right and was subsequently indicted for an additional offense.").

Once a defendant presents circumstances that raise a presumption of vindictiveness, the burden "shifts to the government to rebut the presumption with 'legitimate, objective reasons' for its charging decision." Korey, 614 F. Supp. 2d at 583 (quoting United States v. Esposito, 968 F.2d 300, 305 (1992)). These legitimate reasons may include "new evidence, new witnesses, a new inculpatory statement, a change in the law, intervening criminal activity, . . . or public demand for prosecution on additional crimes allegedly committed." Id. at 585 (collecting cases).

Defendant's argument that he successfully exercised a legal right and was subsequently indicted for another crime is insufficient to raise a presumption of vindictive prosecution. The indictment in this case was based on Defendant's possession of a firearm *after* his prior

indictment. In other words, the second indictment was not "based upon the same underlying conduct" as the first indictment, id.; to the contrary, this indictment was based on new evidence of intervening criminal activity that the Government uncovered while Defendant was incarcerated on the previous charge. Further, Defendant did not face more serious charges or harsher penalties in the second indictment. Defendant has failed to raise a presumption of vindictiveness, as there is no indication that the second indictment was based on anything other than "the usual determinative factors," Schoolcraft, 879 F.2d at 67.

As for Defendant's selective prosecution claim, "[a] decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive." Schoolcraft, 879 F.2d at 68. To establish a claim of selective prosecution, a defendant must demonstrate two factors: "First, he must provide evidence that persons similarly situated have not been prosecuted. Second, he must show that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right." Id. (citing Government of Virgin Islands v. Harrigan, 791 F.2d 34, 36 (3d Cir. 1986)). The defendant bears the burden of proof. Id.

In this case, Defendant has failed to establish either factor of the test for selective prosecution. Defendant provides no support for his assertion that the other individuals whom he alleges received disparate treatment—Santina Simmons, Lamont "Jake" McNeal, and Hakeem Harris—were similarly situated to himself. (See Def.'s Mot. to Dismiss 29; Gov't's Resp. to Def.'s Mots. 16.) Likewise, in addressing the test's second prong, Defendant merely recites the legal standard that "the decision to prosecute him was made on the basis of an unjustifiable standard and arbitrary factor, such as[] improper motivation by the Armed Career Criminal Act[]

with the intent to convict Defendant of an arrest not supported by probable cause." (Def.'s Mot. to Dismiss 32.) Defendant also alleges that he was selected for prosecution in retaliation for exercising a legal right in his previous case, and he baldly asserts that "[a]nimus was also a motivating factor[] behind the Government's misconduct." (Id.) These claims fail to show that the charging decision was based on any legally unjustifiable standard or arbitrary factor. Accordingly, Defendant has failed to make out his selective prosecution claim, and we deny Defendant's Motion to Dismiss Indictment (Doc. No. 197).

### D. Defendant's First Addendum: Speedy Trial Right

In Defendant's "Addendum in Support of Motion to Dismiss Indictment" (Doc. No. 210)—which is in fact a second motion to dismiss the indictment—Defendant seeks to raise an additional reason for dismissal: that the Government allegedly violated his Sixth Amendment and statutory rights to a speedy trial. (Def.'s Addendum Supp. Mot. to Dismiss Indictment 3 ("Def.'s First Addendum") (citing 18 U.S.C. § 3161).) Even if we assume that Defendant's claims are timely,[2] we find no constitutional or statutory violation of Defendant's speedy trial rights.

#### 1. Constitutional Speedy Trial Right

The Supreme Court in Barker v. Wingo established a four-factor test for evaluating whether a defendant's constitutional right to a speedy trial has been violated. 407 U.S. at 530–31. "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant."

---

[2] The Supreme Court has warned against presuming waiver of the constitutional right to a speedy trial based on a defendant's failure to assert this right in a timely manner. United States v. Velazquez, 749 F.3d 161, 182 (3d Cir. 2014) ("Courts should indulge every reasonable presumption against waiver . . . [and] not presume acquiescence in the loss of fundamental rights.") (alterations in original) (quoting Barker v. Wingo, 407 U.S. 514, 525–26 (1972)).

Valazquez, 749 F.3d at 174 (citing Barker, 407 U.S. at 430–31). "[N]o one factor is dispositive nor 'talismanic'" Id. (quoting Hakeem v. Beyer, 990 F.2d 750, 770 (3d Cir. 1993)).

As for the length of the delay, "[t]he speedy trial clock, for Sixth Amendment purposes, begins to run from either the date of arrest or indictment, whichever is earlier, and ends with the commencement of trial." United States v. Green, 516 F. App'x 113, 124 (3d Cir. 2013). Here, approximately ten months elapsed between the April 2012 indictment and the beginning of the jury trial in February 2013.

Regarding the reason for the delay, Defendant rehashes his oft-repeated argument that the Government intentionally withheld evidence from him, and he asserts that this failure to disclose forced him to seek continuances. (Def.'s First Addendum 3.) We find, however, that the majority of the delay is attributable to Defendant. Defendant and his counsel[3] repeatedly sought continuances of trial dates (see Order of Feb. 4, 2013, Doc. No. 62; Def.'s Mot. to Continue Jury Trial, Doc. No. 12). Despite Defendant's contention that the Government intentionally caused this delay, we see no evidence that this was the case, and we conclude that this factor weighs against Defendant. Cf. Green, 516 F. App'x at 124; Reid v. United States, 871 F. Supp. 2d 324, 337 (D. Del. 2012) ("The . . . record clearly demonstrates that the majority (if not all) of the delay in this case was attributable to movant's requests and motions. Therefore, factor two weighs in favor of the government.").

In considering the third factor, we note that the instant motion marks the first instance in which Defendant has asserted his speedy trial right in this case, which weighs against Defendant. See United States v. Otero, 557 F. App'x 146, 150 n.5 (3d Cir. 2014) ("Although delay in asserting the constitutional right to a speedy trial does not constitute a waiver, failure to assert

_____

[3] Delay caused by a defendant's counsel is attributable to the defendant. Green, 516 F. App'x at 124 (citing Vermont v. Brillon, 556 U.S. 81 (2009)).

the right will make it difficult for [a defendant] to prove that he was denied a speedy trial.")

(alteration in original) (quoting <u>Hakeem</u>, 990 F.2d at 764). Indeed, Defendant expressly agreed

to *waive* this right rather than assert it prior to trial. (Tr. Pre-Jury Trial Proceeding, Feb. 4, 2013

38:16–39:1, 41:6–9.) As with the first and second factors, this factor does not favor Defendant.

Finally, we consider any prejudice Defendant may have suffered as a result of the trial's

delay. Pretrial incarceration of ten months is not *per se* prejudicial. <u>See</u> <u>Hakeem</u>, 900 F.2d at 761

(holding that pretrial incarceration of thirteen months does not itself constitute prejudicial pretrial

delay). Defendant contends that he suffered prejudice as a result of the Government's failure to

expeditiously produce evidence (<u>see, e.g.</u>, Def.'s First Addendum 6), which is beside the point

for his speedy trial claim; he fails to allege, let alone demonstrate how, the ten-month delay

before trial itself caused him any prejudice. In other words, while "a defendant can establish

prejudice by showing, for example, that his defense was impaired as a result of the delay," as

might occur in a case where exculpatory witnesses die during a lengthy pretrial period, <u>see</u>

<u>Green</u>, 516 F. App'x at 125, Defendant in this case merely argues that the Government's failure

to disclose evidence earlier impaired his defense, not that the delay of trial itself hindered his

case. Further, he fails to demonstrate how the Government's delay in producing evidence

actually caused him prejudice. Without any demonstration of actual prejudice caused by the

trial's delay, this factor weighs against Defendant as well. As such, we find that the Government

did not violate Defendant's constitutional right to a speedy trial.

### 2. Statutory Speedy Trial Right

We also conclude that Defendant's statutory rights under the Speedy Trial Act, 18 U.S.C.

§ 3161 <u>et seq.</u>, were not violated. Section 3161(c)(1) provides that "[i]n any case in which a plea

of not guilty is entered, the trial of a defendant charged in an information or indictment with the

commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). After the speedy trial clock begins to run, the court must exclude certain delays from calculations of the time period that has elapsed. § 3161(h). As relevant here, we must exclude from the 70-day timeframe a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D).

In this case, the seal on Defendant's indictment was lifted and the indictment was made public on May 24, 2012. (See Gov't's Request to Unseal Indictment, Doc. No. 6.) The speedy trial clock began to run on this date, which occurred after Defendant's May 16, 2012 initial appearance before the magistrate judge. On June 7, 2012, Defendant filed a motion to suppress (Doc. No. 11). Fourteen days had elapsed on Defendant's speedy trial clock at that point. This Court held two hearings to resolve this pretrial motion, and these hearings concluded on January 31, 2013. (See Tr. Cont. Mot. to Suppress Hearing, Jan. 31, 2013 46:23–25; Order of Feb. 28, 2013, Doc. No. 72.) During the time between the motion's filing and the conclusion of the motion hearings, the speedy trial clock was tolled. § 3161(h)(1)(D); see United States v. Rashid, 593 F. App'x 132, 135 (3d Cir. 2014), cert. denied, No. 14-9371, 2015 WL 1779323 (U.S. May 18, 2015). The clock began to run again on January 31, 2013 and continued to run until the beginning of Defendant's jury trial on February 21, 2013. We thus add this 21-day span from 2013 to the 14 days that had previously elapsed on Defendant's speedy trial clock to find that, after accounting for the excludable delays, Defendant's trial began within 35 days of his public indictment. As this 35-day period falls well within the 70 days allowed by the Speedy Trial Act,

we need not consider whether any other delays during that time, such as the continuances that this Court granted pursuant to Defendant's motions (see Order of June 12, 2012, Doc. No. 13; Order of Feb. 4, 2013, Doc. No. 62), were lawfully excludable under the Act as well. We conclude that Defendant's statutory speedy trial rights were not violated, and we deny the claims raised in Defendant's First Addendum (Doc. No. 210).

      E.  Defendant's Second Addendum: Withholding Agent Henning's Grand Jury Testimony

Defendant's "Second Addendum in Support of Motion to Dismiss Indictment" (Doc. No. 225) is essentially a third motion to dismiss the indictment. In this motion, Defendant argues that the Government failed to disclose Agent Henning's grand jury testimony,[4] in violation of Defendant's rights under Brady v. Maryland, 373 U.S. 73 (1963), and under the Jencks Act, 18 U.S.C. § 3500, et seq. (Def.'s Second Addendum Supp. Mot. Dismiss Indictment 1 ("Def.'s Second Addendum").) In particular, Defendant argues that by failing to produce this portion of the grand jury testimony, the Government hindered Defendant's ability to effectively cross-examine Agent Henning at trial. (See id. at 6.) Defendant seeks dismissal of the indictment on these grounds.

Defendant has once again failed to allege any prosecutorial misconduct before the grand jury that might warrant the indictment's dismissal. As in his original Motion to Dismiss Indictment, Defendant alleges in his Second Addendum only that the Government withheld material from him rather than from the grand jury. (See id. at 6–7.) Moreover, Defendant's motion could not plausibly assert that the Government engaged in misconduct by failing to

---

[4] At the hearing on May 26, 2015, the Government expressed uncertainty as to whether Agent Henning had testified before the grand jury in this case. In our Order of May 26, 2015 (Doc. No. 241), we instructed that if Agent Henning had done so, the Government shall provide the transcript of this testimony to Defendant on or before May 29, 2015. We assume for the sake of this Order that Agent Henning did testify before the grand jury in this case and that a transcript of this testimony was not previously disclosed to Defendant, as the Government has not indicated otherwise.

present this material either to the grand jury or to Defendant himself prior to the grand jury proceedings, as the material that Defendant claims the Government withheld is a transcript of Agent Henning's grand jury testimony in this case. It goes without saying that this material did not exist prior to the grand jury proceedings at which the testimony was given. Thus, no violation of Defendant's rights under Brady or the Jencks Act could have arisen from the Government's withholding of Agent Henning's grand jury testimony until after the grand jury proceedings. As such, Defendant cannot raise a meritorious argument for dismissal of the indictment based on the alleged failure to disclose Agent Henning's grand jury testimony.[5]

We deny the claims raised in Defendant's Second Addendum (Doc. No. 225). We also deny Defendant's "Motion for the Court to Order the Government to Respond to Defendant's Second Addendum in Support of Motion to Dismiss Indictment" (Doc. No. 228) as moot.

III.     Defendant's Motion to Disqualify the U.S. Attorney's Office (Doc. No. 211)

We turn next to Defendant's "Motion to Disqualify AUSA Virginia Paige Pratter and the U.S. Attorneys Within the Eastern District of Pennsylvania from the Matter" (Doc. No. 211). Defendant argues that this Court should disqualify the U.S. Attorney's Office ("USAO") for this district, including the assigned Assistant U.S. Attorney ("AUSA") Paige Pratter from handling this case. (Def.'s Mot. to Disqualify 1, 8.) He asserts that the USAO and the AUSA have a conflict of interest in their involvement with this case and that their prosecution of Defendant

---

[5] We identify another reason why a court cannot dismiss an indictment based on a violation of the Jencks Act. The Jencks Act provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness . . . shall be the subject of . . . discovery[] or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). A Jencks Act violation therefore cannot arise until after the Government's witness testifies on direct examination at trial and the defendant moves for production of the witness's prior statements. See § 3500(a)–(b). Because such a violation could have no bearing on the grand jury proceedings that took place before trial, it necessarily follows that a defendant cannot raise a meritorious argument for dismissal of the indictment based on an alleged Jencks Act violation.

creates an "appearance of partiality." (Id. at 6.) Defendant also reiterates the claims of prosecutorial misconduct that we addressed above. (Id.)

Defendant first claims that the USAO and Ms. Pratter have a conflict of interest stemming from Defendant's civil lawsuit against them. (Id. at 6–7.) On October 23, 2012, several months after Defendant's indictment in this case, Defendant filed a civil complaint against the City of Philadelphia and its police officers, in which he alleged misconduct by the USAO and the AUSA. (Id.) On May 1, 2013, a few months after his jury trial and conviction in this case, Defendant amended his civil complaint to add members of the USAO, including Ms. Pratter, as defendants. (Id.) See Zamichieli v. Andrews, No. 12-3200 (E.D. Pa.). He now argues that Ms. Pratter's position as a defendant in the civil action, and the fact that counsel from the USAO represented Ms. Pratter in that action, gave rise to a conflict of interest in the USAO and Ms. Pratter's continued involvement in this criminal case. (Def.'s Mot. to Disqualify 6–7.)

"The disqualification of Government counsel is a 'drastic measure and a court should hesitate to impose it except where necessary.'" United States v. Vega, 317 F. Supp. 2d 599, 602 (D.V.I. 2004) (quoting United States v. Bolden, 353 F.3d 870, 878 (10th Cir. 2003)); see United States v. Zagami, 374 F. App'x 295, 297–98 (3d Cir. 2010). Thus, courts have disqualified AUSAs "only in limited circumstances," such as where an appointed prosecutor represents multiple parties in a case and where a prosecutor plans to testify as a witness at the defendant's trial. See Vega, 317 F. Supp. 2d at 602 (collecting cases). In these rare circumstances in which "a defendant raises a credible allegation of a prosecutor's conflict of interest or other relationship that would create the appearance of an improper motivation in the prosecution, the court must undertake a careful balancing of proper considerations of judicial administration against the United States' right to prosecute the matter through counsel of its choice." Id. at 602–03 (quoting

<u>United States v. Whittaker</u>, 268 F.3d 185, 194–95 (3d Cir. 2001)) (internal quotation marks omitted).

Here, Defendant has failed to credibly allege that any members of the USAO have a conflict of interest in their involvement with this case. Defendant brought a civil action against the USAO and the AUSA after his conviction by a jury. He thus cannot plausibly claim that any conflict of interest existed when he was charged and convicted of a crime. Moreover, he cannot credibly claim that he has now created a conflict of interest such that the AUSA and all members of the USAO should be disqualified from this case; the prosecutors had no personal stake in the outcome of Defendant's civil trial, as they enjoy prosecutorial immunity for their conduct in initiating and pursuing a criminal prosecution. <u>See</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976). The circumstances of this case differ significantly from those rare circumstances in which disqualification may be appropriate.

Defendant also argues that Ms. Pratter in particular has a conflict of interest in this case, as she is the daughter of a U.S. District Court judge for the Eastern District of Pennsylvania. Yet Defendant has again failed to raise a credible allegation that a conflict of interest exists. There is no reason to believe that a familial relationship between the assigned AUSA and a judge with no involvement in this case might produce a conflict of interest or create an appearance of impartiality. We deny Defendant's motion to disqualify (Doc. No. 211).

IV.     Defendant's Application for an Audio Expert (Doc. No. 222)

In Defendant's "Application for an Audio Expert Under the Criminal Justice Act" (Doc. No. 222), Defendant argues that he requires the assistance of an expert to examine the audio recordings that the Government presented as evidence at his trial. Defendant claims that there are "many irregularities" in the recordings and that the audio was "tainted." (Def.'s App. Audio

Expert 3.) In particular, Defendant suggests that a portion of the recording of a telephone call between himself and Santina Simmons on the evening of July 14, 2011 was altered such that Defendant's instruction that Ms. Simmons should "throw [the] firearm in the river" was deleted from the exhibit presented at trial. (Id. at 4.) According to Defendant's motion, "expert services are needed . . . because tape recordings are not readily identifiable as the original version[] and are particularly susceptible of alteration, tampering, and selective editing. Here, the government never prove[d] its chain of custody" when it entered the July 14, 2011 telephone call into evidence. (Id. at 5.)

Under the Criminal Justice Act ("CJA"), "a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application." 18 U.S.C. § 3006A. A court shall authorize the person to obtain such services if it finds that the services are "necessary." See id. In determining whether this is the case, "a court should first satisfy itself that a defendant *may have a plausible defense*." United States v. Roman, 121 F.3d 136, 143 (3d Cir. 1997) (citation and internal quotation marks omitted). "The variable on which [a court] must focus is, therefore, the probable value the assistance of [expert services] will have . . . and the risk attendant on its absence." Id. at 144 (first and third alterations in original) (quoting Ake v. Oklahoma, 470 U.S. 68, 68 (1985)) (internal quotation marks omitted). As this Court previously reminded Defendant when he requested investigative services for other matters, "[f]unding is not available for the mere asking or to mount a fishing expedition." (Order of Dec. 1, 2014, Doc. No. 184 (quoting United States v. Paczan, 229 F. App'x 100, 104 (3d Cir. 2007)).)

Defendant has failed to establish that expert services are necessary. In this Court's Order of January 31, 2013, we granted the Government's Motion to Admit Audio Recordings after

Defendant withdrew his objections thereto. (Order of Jan. 31, 2013, Doc. No. 60.) After reviewing the recordings that the Government sought to admit as evidence, we specifically determined that "[t]he tape recordings are authentic and correct" and that "[t]here have been no changes in, additions to, or deletions from the tape recordings." (Id.) As we already resolved this matter, we see no reason why Defendant might require expert services to further explore the authenticity of the recordings. See Waldorf, 142 F.3d at 616 n.4. Defendant has failed to show that he may have a plausible defense in this regard, and we deny this application (Doc. No. 222) accordingly.

V.     Defendant's Motions Requesting *In Camera* Review and Seeking Discovery Materials (Doc. Nos. 207, 223, 244)

We next address Defendant's motions requesting *in camera* review and seeking discovery materials. This Court previously denied Defendant's "Motion for the Court to Review *In Camera* Brady and Jencks Materials." (Order of Dec. 17, 2014, Doc. No. 193 (denying Doc. No. 189).) Nonetheless, Defendant filed a "Second Motion for the Court to Review *In Camera* Discovery Materials Produced to the Court by the Government on December 8, 2014" (Doc. No. 207) and a "Motion for the Courts' *In Camera* Inspection of Government's Bates Numbers 1-304" (Doc. No. 244). Because these motions request review of the same materials at issue in Defendant's previous motion and present similarly insufficient grounds for *in camera* review, these motions (Doc. Nos. 207, 244) are denied.

Defendant also filed a "Motion to Compel the Government to Produce to Defendant All Discovery Materials in Relation to Case Nos. 11-393, 12-182, In Order to File Motion for New Trial" (Doc. No. 223). In this motion, Defendant requests that this Court order the Government to "disclose all discovery relevant" to Defendant's previous case and the case at hand. (Def.'s Mot. to Compel 1.) Defendant in particular seeks Agent Henning's grand jury testimony. (Id. at

2.) In our Order of May 26, 2015, this Court ordered the Government to provide Defendant with a full set of the discovery materials from Defendant's case before Judge Schiller, No. 11-393. (Order of May 26, 2015, Doc. No. 241.) We also instructed that if Agent Henning testified before the grand jury in this case, No. 12-182, the Government shall provide Defendant with a transcript of this testimony on or before May 29, 2015. (Id.) Finally, we previously ordered the Government to provide Defendant with a full set of the discovery materials produced to defense counsel in this case. (Order of Dec. 1, 2014 2–4, Doc. No. 184.) As such, we deny Defendant's motion seeking these materials (Doc. No. 223) as moot.

VI.     Defendant's Motion to Reserve Objections (Doc. No. 238)

All that remains is Defendant's "Motion to Reserve Objections to Government's Response to Doc. Nos. 222, 223, and 233 Until Oral Argument on May 27" (Doc. No. 238). As the hearing at which Defendant sought to raise his objections occurred on May 26, 2015, and no motion to reserve objections was necessary in any event, we deny this motion as moot.

VII.    Conclusion

For the foregoing reasons, Defendant's post-trial motions and applications (Doc. Nos. 197, 207, 210, 211, 222, 223, 225, 228, 238, 244) are denied.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.