IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| WHEELER ZAMICHIELI | : | NO. 12-182 |

## ORDER

AND NOW, this 27th day of June 2016, upon consideration of pro se Defendant Wheeler

Zamichieli's Motion for a New Trial (Doc. No. 278), Defendant's Addendum in Support of

Motion for New Trial (Doc. No. 279), Defendant's Motion to Correct Addendum in Support of

Motion for New Trial (Doc. No. 280), Defendant's Addendum to Address in Full Detail

Arguments Contained in Motion for New Trial (Doc. No. 281), Defendant's Motion to Dismiss

Indictment for Violation of His Rights to Due Process (Doc. No. 283), Defendant's Addendum

in Support of Motion to Dismiss Indictment (Doc. No. 282), the Government's Response to Pro

Se Motion for New Trial and Pro Se Motion to Dismiss the Indictment (Doc. No. 286), and

Defendant's Objections to the Government's Response in Opposition to Pro Se Motion for New

Trial and Motion to Dismiss Indictment (Doc. No. 287), it is hereby ORDERED as follows:

1. Defendant's motion to correct his addendum in support of his motion for a new trial
   (Doc. No. 280) is GRANTED.

2. Defendant's motions for a new trial, his motion for a judgment of acquittal, and his
   motion to dismiss the indictment (Doc. Nos. 278, 279, 281, 282 & 283) are DENIED.

## I. Background

This Court's order dated July 10, 2014 (Doc. No. 155) provided a thorough summary of the factual background and procedural history of this case, and the Court will not restate either here.  There have been no significant and relevant procedural developments in the case, apart from Defendant's filing the motions that the Court now considers.  In this order, the Court assesses the several new post-trial motions that Defendant has filed since February 2016.  The Court first considers Defendant's motion seeking a judgment of acquittal and a new trial, as well as the addenda supporting his requests.  Next, the Court addresses Defendant's motion seeking dismissal of the indictment and the addendum in support of this motion.

## II. Discussion

*A. Motion for a Judgment of Acquittal and for a New Trial (Doc. Nos. 278, 279, 280 & 281)*

Defendant argues that he is entitled to a new trial under Federal Rule of Criminal Procedure 33 and a judgment of acquittal under Federal Rule of Criminal Procedure 29.  However, the Court summarily denies his second motion pursuant to Rule 29 because this Court has already held that the Defendant's conviction at trial was supported by substantial evidence (see July 10, 2014 Order, Doc. No. 155), and Defendant has not raised any basis for further consideration of this argument.  The Court next proceeds to Defendant's arguments under Rule 33.

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A new trial may be granted if the verdict is against the weight of the evidence, Tibbs v. Florida, 457 U.S. 31, 37–39 (1981), or if there is newly discovered evidence, United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006), as well as if there is a finding of prosecutorial misconduct, United States v. Dixon, 658 F.2d 181, 193

(3d Cir. 1981).  "Other grounds for granting a new trial, if they constitute errors of sufficient

magnitude, may include denial of a separate trial sought under Federal Rule of Criminal

Procedure 14; admission of improper evidence; and erroneous jury instructions."  United States

v. Brown, No. 90-00144-03, 1991 WL 7378, at *4 (E.D. Pa. 1991) (quoting Wright, Federal

Practice and Procedure: Criminal 2d § 556 (1982 & 1990 Supp.)).  The decision whether to grant

a new trial is wholly within the district court's discretion.  United States v. Quiles, 618 F.3d 383,

390 (3d Cir. 2010) (citing Cimera, 459 F.3d at 458).  However, the Third Circuit has stated that

motions for new trials "are not favored and should be granted sparingly and only in exceptional

cases."  United States v. Arevalo-Caballero, 365 F. App'x 419, 421 (3d Cir. 2010) (quoting

United States v. Silveus, 542 F.3d 993, 1004–05 (3d Cir. 2008)).

Five requirements must be met before newly discovered evidence can justify granting a

motion for a new trial:

> (a) the evidence must be in fact newly discovered, i.e. discovered since the trial;
> (b) facts must be alleged from which the court may infer diligence on the part of
> the movant; (c) the evidence relied on[] must not be merely cumulative or
> impeaching; (d) it must be material to the issues involved; and (e) it must be such,
> and of such nature, as that, on a new trial, the newly discovered evidence would
> probably produce an acquittal.

United States v. Ianelli, 528 F.2d 1290, 1292 (3d Cir. 1976) (quoting United States v. Howell,

240 F.2d 149, 159 (3d Cir. 1956)).  "A movant seeking a new trial on the basis of newly

discovered evidence bears a heavy burden in proving each of these requirements."  United States

v. Brown, 595 F.3d 498, 511 (3d Cir. 2010) (internal quotation marks omitted).  "If just one of

the requirements is not satisfied, a defendant's Rule 33 motion must fail."  United States v.

Kelly, 539 F.3d 172, 182 (3d Cir.2008) (citing United States v. Jasin, 280 F.3d 355, 365 (3d Cir.

2002)).  Further, "[c]ourts should 'exercise great caution in setting aside a verdict reached after

fully-conducted proceedings,' and particularly so where 'the action has been tried before a jury.'" Id. (quoting United States v. Kamel, 965 F.2d 484, 493 (7th Cir.1992)).

Defendant alleges that there are several bases for granting a new trial. He first claims that newly discovered evidence and admission of improper evidence at trial warrant a new trial. He also claims that a new trial is justified because the Government allegedly suppressed several pieces of evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500, et seq. The Court considers each argument in turn.

### 1. Newly discovered evidence and improper evidence

To support his contention that a new trial is warranted, Defendant gives a lengthy account, which the Court will not restate here, of how the detectives and officers involved in his first federal case before Judge Schiller (No. 11-CR-393) falsified police records and lied under oath. (Def.'s Mot. New Trial 9–25, Doc. No. 278.) He points to two pieces of purported new evidence to support his claims: recent developments unconnected to this case that have called homicide detective Ronald Dove's credibility into question and a "handwriting analysis" that the Defendant himself conducted. (Mot. New Trial 9, 13.) He argues that impropriety related to his case before Judge Schiller, as evidenced by Dove's corruption and the handwriting analysis, has tainted the evidence that formed the basis of Defendant's conviction in this case. (Mot. New Trial 9–25.) Defendant claims that, during his improper imprisonment at the Federal Detention Center in Philadelphia (the "FDC"), his phone calls were unlawfully recorded. (Mot. New Trial 17–25.) Evidence derived from improper monitoring of those phone calls, accordingly, should have been suppressed in the case before this Court, both because Defendant's calls were monitored without Defendant's consent and because Defendant's imprisonment was improper.

(Mot. New Trial 17–25.)  Without this evidence, Defendant argues, he could not have been convicted in this case.  (Mot. New Trial 17–25.)

To support this motion under Rule 33, Defendant merely repackages arguments he previously made to support a motion under Rule 29.  The Court has already addressed and rejected the majority of Defendant's contentions and will not revisit his arguments at length. With respect to the so-called newly discovered evidence related to criminal charges against Detective Dove, this Court has already previously addressed and rejected Defendant's arguments, and the Court adopts its prior reasoning now.  (See July 10, 2014 Order 17–18.)  The added fact of Dove's January 2015 arrest does not alter this Court's analysis.  As this Court previously stated, the propriety of the February 2011 search is neither relevant to this case nor did it taint the evidence introduced at the trial for this case.  (See July 10, 2014 Order 17–18.)

As for Defendant's claim that his FDC phone calls were improperly monitored, the Court has, once again, already rejected Defendant's arguments and adopts the reasoning previously articulated in this Court's July 2014 order.  As the Court stated in that order, the telephone recordings that were introduced at Defendant's trial for his second conviction were properly admitted under Brown v. Illinois, 422 U.S. 590, 599 (1975), as any taint from the February 2011 search had dissipated in the time that elapsed between the search and the phone calls.  (See July 10, 2014 Order 10–13.)  Additionally, Defendant's claim of a violation of his right to privacy in his prison phone calls is unpersuasive because, as this Court has already once stated, "prisoners do not have a reasonable expectation of privacy when speaking on a prison telephone, especially where a warning has been given."  (July 10, 2014 Order 12 n.6 (quoting United States v. Shavers, 693 F.3d 363, 390 n.7 (3d Cir. 2012), rev'd on other grounds, 133 S. Ct. 2877 (2013).)

Defendant also purports to introduce as "newly discovered evidence" a handwriting analysis that he himself conducted by comparing handwriting on a traffic citation issued to him by Officer Melvin Victor with the handwriting appearing in two incident reports prepared by the same officer.  (Mot. New Trial 13.)  According to Defendant, there is a discrepancy in the officer's handwriting in these different documents, which indicates that Officer Victor did not actually prepare all three documents.  (Mot. New Trial 13.)  Defendant contends that this discrepancy supports his conspiracy theory regarding Detective Dove and a cover-up involving numerous members of the Philadelphia police department.  (See Mot. New Trial 13–15.)  Defendant argues that the handwriting discrepancies and Dove's involvement in preparing fraudulent paperwork should have been clear to Special Agent Henning, who prepared an affidavit in support of the complaint and arrest warrant in 11-CR-393.  (Mot. New Trial 17.)  Agent Henning's decision to prepare the affidavit in spite of the allegedly obvious impropriety suggests that the affidavit was "deliberate[ly] and recklessly false."  (Mot. New Trial 17, 23–25.)  Defendant argues that Agent Henning's improper affidavit meant that Defendant was improperly detained at the FDC; because of this improper detention, recordings of the FDC phone calls should have been suppressed; and the suppression of this evidence would have resulted in his acquittal.  (Mot. New Trial 17, 23–25.)

Once again, Defendant's arguments fail to persuade the Court.  The Court previously found that Special Agent Henning had a sincere, objectively reasonable belief that the arrest warrant was based on a valid application of the law to the known facts.  (July 10, 2014 Order, 11 n.4.)  This Court also found that the legality of the July 2011 arrest would not affect the admissibility of the FDC telephone calls and that even if the arrest had violated the Fourth Amendment, the telephone recordings would still be admissible.  (July 10, 2014 Order, 11 n.4.)

6

The added factor of a potential handwriting discrepancy does not alter the Court's findings with respect Agent Henning's reasonably held belief or the Court's analysis regarding the admissibility of the FDC calls.  Accordingly, for the same reasons stated in the Court's July 2014 order, Defendant's arguments are rejected.

Moreover, Defendant's claim is also deficient under Ianelli.  The supposed handwriting evidence is not newly discovered and Defendant has alleged no facts from which the Court can infer diligence.  The documents on which Defendant bases his claim were available to him before trial.  Thus, any purported discrepancy in handwriting could have been discovered at or before the time of the trial.  See Kelly, 539 F.3d at 182 ("In applying [the second] prong, we have consistently focused our inquiry on whether the evidence at issue could have been discovered before or at the time of trial with the exercise of reasonable diligence on behalf of the defendant and/or his counsel.").  Defendant did not raise this argument until December 2015 in his motion seeking funds under the Criminal Justice Act to pay for a handwriting expert.  (See Mot. for Handwriting Analysis under the Criminal Justice Act, Doc. No. 273.)  He has alleged no facts that support a finding that he acted diligently.  Therefore, Plaintiff's motion must be denied.

But even if the first four Ianelli requirements were satisfied, Defendant's contention would fail because he cannot establish the fifth Ianelli requirement, under which the evidence must be of such a nature that it would probably produce an acquittal.  The new evidence consists merely of Defendant's lay observations and his farfetched statements about an elaborate plot to frame him.  Defendant's proffered evidence is neither credible nor is it reliable.  Cf. Kelly, 539 F.3d at 189 ("[T]he district court is to serve as a gatekeeper to a new trial, deciding in the first instance whether the defendant's proffered 'new evidence' is credible." (quoting United States v. McCullough, 457 F.3d 1150, 1167 (10th Cir. 2006)).  Defendant's convoluted and improbable

series of arguments, with nothing concrete offered as support, would not produce an acquittal.

Because of Defendant's dubious contentions, and keeping in mind this Court's need to exercise

caution in setting aside a verdict reached after a full and proper jury trial, this Court finds that

Defendant's so-called handwriting analysis does not offer a basis for granting a new trial.[1]

   2.  *Alleged improper suppression of evidence*

The Supreme Court held in <u>Brady v. Maryland</u> that "the suppression by the prosecution

of evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment."  373 U.S. at 87.  The Supreme Court has further

established that evidence is considered "material only if there is a reasonable probability that,

had the evidence been disclosed to the defense, the result of the proceeding would have been

different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  In other words, "the touchstone

of materiality is a 'reasonable probability' of a different result."  <u>Johnson v. Folino</u>, 705 F.3d

---

[1] Defendant also requests that the Court conduct a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), on the basis that Agent Henning's affidavit in support of Defendant's arrest in this case was deliberately false and demonstrated a disregard for the truth.  (Mot. New Trial 23.)  In <u>Franks</u>, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to examine the truthfulness of an affidavit in support of a search warrant if a defendant (1) "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) demonstrates that "the allegedly false statement [was] necessary to the finding of probable cause."  <u>Id.</u> at 155–56.  <u>Franks</u> also extends to affidavits in support of arrest warrants.  <u>See</u> <u>United States v. Webb</u>, 499 F. App'x 210, 212 (3d Cir. 2012) (reviewing whether district court erred by denying defendant's motion for a <u>Franks</u> hearing with respect to his arrest warrant).

To establish the first requirement under <u>Franks</u>, defendants must allege deliberate falsehood or reckless disregard for the truth; they must also provide an offer of proof.  <u>Franks</u>, 438 U.S. at 171. Defendants must point to specific portions of the affidavit that they claim are false, include a statement of supporting reasons, and submit "[a]ffidavits or sworn or otherwise reliable statements of witnesses"—or else "satisfactorily explain[]" the absence of such support.  <u>Id.</u>  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  <u>Id.</u>

In the instant matter, Defendant has failed to make the requisite showing under <u>Franks</u>. Defendant's own farfetched statements are the only offered support for his allegation that Agent Henning's affidavit was improper.  He has not provided a reliable offer of proof, nor has he pointed to the specific sections of the affidavit with which he takes issue.  Accordingly, there is no basis for a <u>Franks</u> hearing, and Defendant's request is denied.

117, 128–29 (3d Cir. 2013) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995)).  "No denial of

due process occurs if Brady material is disclosed to [a defendant] in time for its effective use at

trial."  <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983).

> The Jencks Act provides that:

> [a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.  If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b).  The statute provides that only certain classes of statements must be

produced.  They are as follows: (1) written statements made by witnesses and signed or

otherwise adopted by him; (2) recordings or transcriptions of oral statements made by the

witness and recorded contemporaneously; and (3) statements made by the witness to the

grand jury.  <u>Id.</u> § 3500(e).  As the Supreme Court stated in <u>Palermo v. United States</u>,

"[t]he Act's major concern is with limiting and regulating defense access to government

papers, and it is designed to deny such access to those statements which do not satisfy the

requirements of (e), or do not relate to the subject matter of the witness' testimony."  360

U.S. 343, 354 (1959).

Defendant argues that the Government improperly suppressed the following evidence in

violation of <u>Brady v. Maryland</u> and the Jencks Act: Defendant's July 14, 2011 FDC telephone

call; the report and notes of Agent Henning's interview with Santina Simmons between July 14,

2011 and July 15, 2011; a subpoena for recordings of Defendant's FDC telephone calls; evidence

regarding the seizure of Defendant's firearm from Santina Simmons, and evidence of a grant of

immunity to Simmons; Agent Henning's grand jury testimony in both this case and the case

before Judge Schiller; and the report and rough notes of Agent Henning's interview with Defendant's father.  (Mot. Dismiss. 28.)  On considering Defendant's arguments, the Court finds that Defendant's allegations do not warrant a new trial.

As an initial matter, this Court has already found that the Government made all relevant disclosures and did not impermissibly suppress evidence either in violation of <u>Brady</u> or the Jencks Act.  (<u>See</u> Feb. 20, 2013 Tr. of Jury Trial, vol. 1 at 26–29, 31–32, 36–38.)  Before the trial in this matter began, Defendant repeatedly argued before this Court that he had not received all relevant <u>Brady</u> and Jencks material.  (<u>E.g.</u>, Feb. 20, 2013 Tr. 37.)  In response to Defendant's allegations, the Court questioned the Government's attorney:

> THE  COURT:        Ms. Pratter, have you given the defense all the relevant appropriate discovery in this matter?
>
> MS. PRATTER:     Yes, Your Honor.
>
> . . . .
>
> THE COURT:        Have you turned over all the 302s that memorialize conversations that the various agents had with Ms. Simmons?
>
> MS. PRATTER:     Yes, Your Honor.

(Feb. 20, 2013 Tr. 26.)  When the Defendant continued to press his point, the following exchange took place, and the Court unequivocally found that all relevant <u>Brady</u> and Jencks disclosures had been provided to Defendant:

> THE DEFENDANT: I need to -- I need to review discovery myself, Your Honor.
>
> THE COURT:         I heard you. Right? I heard you the first time.  I heard you the second time.  I heard you the third time.  And I heard you the fourth time.  And that which you've asked for, the Government has already told me doesn't exist. I know you want it to exist but it doesn't exist, and the Government has already told me that they've given me everything that they have . . . .

. . . .

THE DEFENDANT: I need the discovery.  I need the Jencks material.

THE COURT:        Okay.

THE DEFENDANT: I need the Brady material, the Giglio material.  I need my entire discovery so I –

THE COURT:        I'm --

THE DEFENDANT: -- can properly prepare in my defense.

THE COURT:        I'm telling you you already have it.  So then what we're talking about now, because I'm tired of talking about the same thing from five different directions, because at the end of the day, I'm not going to convince you, and I'm not going to make you happy.  So I have ruled against you, because I'm satisfied that all that's been provided.

(Feb. 20, 2013 Tr. 36–38.)

As is clear from the exchanges reproduced above, the Court already addressed Defendant's concerns regarding <u>Brady</u> and Jencks material and found that the Government had satisfactorily met all its obligations.[2]  Nevertheless, the Defendant has continued making requests for these materials, filing numerous motions in which he claims that he has not received all relevant evidence.  This Court has repeatedly found that the Government met its obligations.  Indeed, despite finding that the Government had met its obligations under <u>Brady</u> and Jencks, the Court issued an order on December 1, 2014 in which it stated as follows:

> This Court notes that Defendant has not presented facts suggesting that the Government has withheld any materials in violation of <u>Brady</u> or <u>Jencks</u>; Defendant merely requests the production of certain recordings and documents

---

[2] With respect to the Jencks disclosures, the Government was under no statutory obligation to provide this material before the start of trial.  <u>See</u> 18 U.S.C. § 3500(a) ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.").  However, the Government had provided relevant evidence anyway, giving Defendant ample time to review the materials before trial.

that he refers to as <u>Brady</u> and <u>Jencks</u> materials.   Nonetheless, we accept the Government's offer to turn over to Defendant all materials previously produced to defense counsel.

(Dec. 1, 2014 Order 3 (citation omitted).)  Thus, the Court found that there had been no <u>Brady</u> or Jencks Act violation.  Although Defendant now alleges that he has never seen the relevant evidence, the Court also ensured that Defendant received additional copies of the purportedly missing material, even after finding that Defendant had already received these materials prior to trial.  As was true at the time of this Court's previous order, Defendant still has not pled any facts to support a finding that the Government has withheld any <u>Brady</u> or Jencks material.

The Third Circuit also found that Defendant received relevant evidence.  In considering a writ of mandamus that Defendant filed in this matter, the Third Circuit stated:

> In this case, Zamichieli made numerous requests for discovery in the District Courts.  After receiving it, he continued to seek material he alleged had been improperly excluded.  The courts ruled that the Government had complied with its obligations and denied Zamichieli's requests.  He may not now use a mandamus action to appeal those unfavorable rulings.

<u>In re Wheeler Zamichieli</u>, 628 F. App'x 72, 73 (3d Cir. 2015).  Thus, the Third Circuit is in agreement with this Court that Defendant's requests have been met and that this Court has ruled that the Government complied with its obligations.

Defendant has raised no basis for reconsideration of his arguments regarding the Government's disclosures, and this Court accordingly need not consider Defendant's meritless allegations anew.  Therefore, Defendant's contentions under <u>Brady</u> and the Jencks Act do not provide a basis for a new trial, and his motion under Rule 33 is denied.

*B. Motion to Dismiss the Indictment (Doc. Nos. 282 & 283)*

Defendant next argues that the indictment should be dismissed because the length of time that has transpired since his conviction in February 2013 to his sentencing, which has not yet taken place, violates his right to a speedy trial under the Sixth Amendment and his due process rights under the Fifth Amendment.[3]  (Mot. Dismiss Indictment 1–3, Doc. No. 283.)  Defendant claims that his sentencing has been delayed because the Government suppressed evidence that was favorable to him.  (Mot. Dismiss Indictment 5.)

Defendant's argument under the Sixth Amendment must be denied.  In May 2016, the Supreme Court held in Betterman v. Montana that the right to a speedy trial "does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges."  136 S. Ct. 1609, 1612 (2016).  Accordingly, Defendant's contention that his speedy trial rights were violated is without merit.

However, the Betterman Court explicitly stated that "[f]or inordinate delay in sentencing, although the Speedy Trial Clause does not govern, a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments."  Id.  Since Defendant also argues that his due process rights have been violated, this Court next considers Defendant's arguments under the Fifth Amendment.

The Due Process Clause protects against inordinate delays in trial, including at sentencing.  Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987) (Burkett I), abrogated on other grounds by Betterman v. Montana, 136 S. Ct. 1609 (2016).  In Burkett I, the Third Circuit stated that "as a general matter, the *Barker* factors should also inform our due process

---

[3] Defendant also claims that the delay violates his due process rights under the Fourteenth Amendment, but the Court summarily rejects this argument since the Fourteenth Amendment is not relevant in the context of this federal prosecution.

determination, for 'the right to avoid unreasonable delay in the appellate process is similar to the right to a speedy trial.'"  826 F.2d at 1222 (quoting <u>DeLancy v. Caldwell</u>, 741 F.2d 1246, 1247 (10th Cir. 1984)).  Additionally, the court stated that due process "protects . . . the right 'to obtain a decision at all,'" including "a right to know what the sentence is to be."  <u>Id.</u> at 1221 (quoting <u>Evitts v. Lucey</u>, 469 U.S. 387, 395 n.6 (1985)).

Though the <u>Burkett I</u> court was specifically addressing Fourteenth Amendment due process concerns resulting from unreasonable delays in the appellate process, the court's extension of the applicability of the <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), factors to the due-process context is instructive and suggests that the same factors should be applied in the case before this Court.  The delay in the appeal process that the <u>Burkett I</u> court was considering stemmed from the state court's having failed to sentence the defendant over five years after he was convicted.  826 F.2d at 1210.  Here, as was true of the <u>Burkett I</u> defendant, Defendant claims that his due process rights have been violated since he has not yet been sentenced, nearly three years after he was convicted.  The delay, he claims, has impaired his right to know what his sentence will be and his right to avail himself of the appeals process.  (<u>See</u> Mot. Dismiss Indictment 2.)  Therefore, though <u>Burkett I</u> involved a slightly different factual scenario, the decision's extension of the <u>Barker</u> factors to the due-process context weighs in favor of applying the <u>Barker</u> factors under the factual circumstances present in this case.  Further, the Fourteenth Amendment Due Process Clause, though applicable to the states, does not differ in scope from the Due Process Clause of the Fifth Amendment, so this disparity does not bar application of the <u>Barker</u> factors in the matter before this Court.

In <u>Barker v. Wingo</u>, the Supreme Court established a four-factor test for evaluating whether a defendant's constitutional right to a speedy trial has been violated.  407 U.S. at 530–

31.  Courts must "assess four factors in determining whether the constraints imposed by . . . due

process rights have been honored: (1) length of the delay, (2) reason for the delay, (3) the

defendant's assertion of his right, and (4) prejudice to the defendant."  Burkett v. Fulcomer, 951

F.2d 1431, 1438 (Burkett II) (citing Barker, 407 U.S. at 517–38).  The Barker Court stated:

> We regard none of the four factors identified . . . as either a necessary or sufficient
> condition to the finding of a deprivation of the right of speedy trial.  Rather they
> are related factors and must be considered together with such other circumstances
> as may be relevant.  In sum, these factors have no talismanic qualities; courts
> must still engage in a difficult and sensitive balancing process.

407 U.S. at 533.

The length of the delay is a threshold issue.  See Burkett II, 951 F.2d at 1439.  Only if the

delay is sufficiently long to constitute a due process violation based on the particular

circumstances of the case can this Court proceed to an analysis of the remaining Barker factors.

See Barker 407 U.S. at 530–31 ("Until there is some delay which is presumptively prejudicial,

there is no necessity for inquiry into the other factors that go into the balance.  Nevertheless,

because of the imprecision of the right to speedy trial, the length of delay that will provoke such

an inquiry is necessarily dependent upon the peculiar circumstances of the case.").  Here,

Defendant was convicted in February 2013 and has not yet been sentenced.  This over three-year

delay is sufficiently long to trigger an assessment of the remaining Barker factors.

Regarding the reason for the delay, according to the Barker Court, as with the length of

the delay, "different weights should be assigned to different reasons."  Id. at 531.  Thus, a

deliberate attempt to interfere with the defense would weigh heavily against the government.  Id.

But a more innocuous reason, such as negligence or an overcrowded court docket, should weigh

less heavily, though it must still be considered "since the ultimate responsibility for such

circumstances must rest with the government rather than with the defendant."  Id.  The Third

Circuit stated, though in the context of the Sixth Amendment's guarantee for a speedy trial, that "the right to a speedy trial essentially protects defendants against delays *caused by the government*.  If the delay is attributable exclusively to the defendant, 'he will be deemed to have waived his speedy trial rights entirely.'"  Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) (emphasis in original) (quoting United States v. Manning, 56 F.3d 1188, 1195 (9th Cir. 1995)).

Defendant rehashes his oft-repeated argument that the Government intentionally withheld evidence from him, and he asserts that this failure to disclose forced him to seek continuances. (Mot. Dismiss Indictment 5–12.)  The Court finds, however, that the majority of the delay is attributable to Defendant.  As an initial matter, the Government has neither suppressed evidenced nor engaged in misconduct, as this Court has found previously (see, e.g., June 15, 2015 Order, 4– 8, Doc. No. 246) and as it stated above (see supra 8–12).  Moreover, the Government's contribution to the sentencing delay has been minimal.  The Government filed its sentencing memorandum on August 7, 2013, approximately five months after Defendant was convicted and in anticipation of Defendant's original scheduled sentencing date.  In the years following Defendant's conviction, the Government has not filed any documents except responses to the Defendant's frequent filings and seven motions asking for modest and reasonable extensions of time to respond to the Defendant's pleadings.

A review of the docket in this case clearly demonstrates that Defendant has been responsible for the majority, if not all, of the delay in his sentencing.  In contrast to the Government's conduct, Defendant has repeatedly delayed the proceedings by asking for almost twenty extensions of time to file motions or to continue the sentencing.  He has also filed numerous motions and supporting documents, including a petition for a writ of mandamus before the Third Circuit Court of Appeals.  These motions have been repetitive and largely without

merit.  Though the Court has repeatedly denied Defendant's requests and motions, he has restated the same arguments ad nauseam, as he does in his motion for a new trial which this Court considered earlier in this order.  Despite Defendant's contention that the Government was the cause for the delay in his sentencing, the Court sees no evidence that this was the case.  The Court therefore concludes that the second <u>Barker</u> factor weighs heavily against Defendant.

With respect to the third factor, the <u>Barker</u> Court noted the importance of a defendant's asserting his right to a speedy trial.  407 U.S. at 531–32 ("The more serious the deprivation, the more likely a defendant is to complaint.  The defendant's assertion of his speedy trial right, then is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right.").  The Court also stated that this third factor was closely related to the other factors: "The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that [the defendant] experiences."  <u>Id.</u> at 531.  But assertions of a right to a speedy trial "must be viewed in the light of [the defendant's] other conduct."  <u>United States v. Loudhawk</u>, 474 U.S. 302, 314 (1986).  Thus, in <u>Loudhawk</u>, the Court found that the third factor should be accorded little weight because "[a]t the same time respondents were making a record of claims in the District Court for speedy trial, they consumed six months by filing indisputably frivolous petitions for rehearing and for certiorari . . . [and] [t]hey also filled the District Court's docket with repetitive and unsuccessful motions."  <u>Id.</u> at 314–15.

In the case before this Court, Defendant has previously asserted a violation of his right to a speedy *trial*, but he has not yet asserted a violation of his due process right to be timely *sentenced*.  But even if his previous assertion of his right to a speedy trial encompassed his right to be timely sentenced, Defendant's concomitant behavior and his significant contribution to the

delay in sentencing leads the Court to conclude that the third factor must be weighed against Defendant. As stated above with respect to the second <u>Barker</u> factor, Defendant has engaged in egregious dilatory conduct. He has filed numerous meritless motions and documents, burdening this Court's time and resources, and causing further delay. Therefore, the third <u>Barker</u> factor does not assist Defendant's argument.

Finally, the Court considers any prejudice Defendant may have suffered as a result of the delayed sentencing. The <u>Barker</u> Court identified three interests that the speedy trial right was designed to protect, two of which are relevant in this particular case, even though, again, the issue here is Defendant's due process right to a timely sentencing rather than his Sixth Amendment right to a speedy trial: "to minimize anxiety and concern of the accused[] and . . . to limit the possibility that the defense will be impaired." 407 U.S. at 532. The <u>Burkett I</u> court discussed defendants' vested interest in knowing what their sentence will be and to proceed with a direct appeal of that sentence. 826 F.2d 1208 (3d Cir. 1987). Impairment of these interests could be prejudicial to Defendant and may merit weighing the fourth <u>Barker</u> factor in favor of the Defendant, though the Court must also consider the broader context of the prejudice, particularly in relation to the other <u>Barker</u> factors.

In this case, Defendant contends that he has suffered prejudice because he has experienced anxiety as a result of not knowing what his sentence will be, that he has developed medical problems because of his prolonged incarceration and lack of proper diet and adequate medical treatment, and that his defense during any potential retrial will be impaired. (Mot. Dismiss Indictment 14–15, Doc. No. 283; Def.'s Addendum Supp. Mot. Dismiss Indictment 1–4, Doc. No. 282.) He also complains that he has lost his fiancée because of his indeterminate

sentence and that his mother has suffered adverse health consequences.  (Addendum Supp. Mot. Dismiss Indictment 1–2.)

The Court does not find that the fourth factor weighs in favor of Defendant.  Defendant's anxiety about what his sentence will be stems from his own actions in delaying sentencing; the Government has not been the cause of Defendant's anxiety.  With respect to Defendant's complaints about the adequacy of medical treatment and resulting health concerns, the Court is unpersuaded by Defendant's contentions.  The Court has already twice rejected Defendant's requests for temporary medical release, finding that Defendant's complaints were without merit and that he had received adequate care.  (Oct. 16, 2014 Order, Doc. No. 170; May 29, 2015, Doc. No. 243.)  Deteriorating witness memories and any resultant prejudice to Defendant's ability to defend himself on retrial or during the sentencing hearing itself are, like Defendant's anxiety, a product of his own conduct, as are any personal consequences that he or his family members have faced.  Without any demonstration of actual prejudice caused by the trial's delay, this factor weighs against Defendant.  To the extent that Defendant seeks certainty and wishes to preserve his defense, he may wish to stop delaying his own sentencing and put an end to his relentless deluge of nonmeritorious and repetitive filings, raising arguments that this Court has already rejected.

Though the Court acknowledges that there has been an extraordinary delay in sentencing Defendant, Defendant has only himself to blame for this delay.  Since three of the four Barker factors considered together all weigh heavily against Defendant, and because Defendant has been a significant contributing force in causing the delay, the Court concludes that the Government did not violate Defendant's due process right to a timely sentencing.  Accordingly, the Court denies Defendant's motion to dismiss his indictment.

III. Conclusion

For the reasons outlined above, the Court DENIES Defendant's motion for a judgment of acquittal (Doc. No. 278), his motion for a new trial (Doc. No. 278, 279 & 281), and his motion to dismiss his indictment (Doc. No. 282 & 283).

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.