IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 12-182 |
| WHEELER ZAMICHIELI | : | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Defendant Wheeler Zamichieli is scheduled for re-sentencing on March 30, 2023, which follows the Third Circuit's vacatur of his previously imposed sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Zamichieli is a five-time felon whose criminal activity includes dealing drugs, carrying firearms, and assaulting a police officer. Further, during the circuitous procedural history of this case, unfortunately, Zamichieli has not accepted responsibility for his actions. Accordingly, the Court should sentence Zamichieli to the statutory maximum of 120 months imprisonment and 3 years supervised release. Because Zamichieli has already served 128 months and 2 days, no further imprisonment can be imposed.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support an above-guidelines sentence in this case.

**A.     BACKGROUND**

      **1.     Facts and Procedural History.**

In April 2012, a federal grand jury in this district returned a one-count indictment against Zamichieli charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In February 2013, Zamichieli was found guilty that charge at trial. In July 2016, Zamichieli was sentenced under ACCA to 210 months imprisonment, but, in April 2017, the Third Circuit vacated the judgment of conviction and sentence for lack of a proper waiver of his right to an attorney under *United States v. Peppers*, 302 F.3d 120 (2002).

The Court held a re-trial before a jury in March 2018. The government presented evidence that in July 2011, Zamichieli, a felon, was incarcerated in the Federal Detention Center (FDC) because of pending charges in a separate case. Around that time, Zamichieli contacted his

girlfriend from the FDC and directed her to sell a Taurus handgun to a North Philadelphia crack dealer for $400. The girlfriend completed the sale on Zamichieli's behalf, and the proceeds went to Zamichieli's benefit. Zamichieli's scheme was captured on prison telephone calls and emails, and the girlfriend and the gun buyer testified at trial. In March 2018, the jury convicted Zamichieli of the Section 922(g)(1) offense. In September 2018, Zamichieli was sentenced under ACCA to 210 months imprisonment.

Zamichieli filed a direct appeal (Number 18-3053). Among other issues asserted in the appeal, Zamichieli claimed the district court had improperly sentenced him under ACCA, including in light of the Supreme Court's recent decision in *Wooden v. United States*, 142 S. Ct. 1063 (2022), because two of his purported predicate convictions were not "separate occasions" under ACCA. The government, for its part, argued that the Third Circuit should affirm as Zamichieli could not demonstrate the district court erred in sentencing Zamichieli under ACCA. A panel of the Third Circuit affirmed in part and vacated in part the judgment, and remanded the case to this Court for re-sentencing in a nonprecedential opinion. Regarding Zamichieli's claim that the district court erred in sentencing him under ACCA, the panel declined from addressing the ACCA-related issue in the first instance, stating:

> Zamichieli specifically appeals the District Court's determination that his 1994 aggravated assault conviction and 1997 PWID conviction did not arise from the same "occasion." The Supreme Court recently set forth the proper analysis for determining when, for the purposes of applying an ACCA sentencing enhancement, prior crimes should be treated as having occurred on "different occasions." *Wooden v. United States*, 142 S. Ct. 1063 (2022). Zamichieli asserts that the assault and drug possession are all part of a single criminal episode. While the record here is murky on exactly when the two offenses occurred, the government concedes for purposes of this appeal that they occurred on the same day. It maintains, however, that, when analyzing the applicability of the ACCA enhancement, Zamichieli's flight from police officers – after assaulting one of them – was, among other things, sufficient as an intervening event to separate the assault from his later arrest for possessing drugs.

> We decline to rule on this same-or-separate occasions question in the first instance. *See O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 763 n.3 (3d Cir. 2021) ("[A]s a 'court of review, not of first view,'" we "will analyze a legal issue without the district court's having done so first only in extraordinary circumstances.") It seems best instead for the District Court to have an initial opportunity to apply the new analysis from *Wooden* to this case. Therefore, we will vacate Zamichieli's 210-month sentence and remand for further consideration in light of *Wooden*. We express no opinion on what result should flow from the application of *Wooden* to the facts here, and the District Court can determine whether further development of the record is in order.

2. **ACCA Does Not Apply In This Case**.

Now before this court is Zamichieli's re-sentencing. Regarding ACCA, it no longer applies. In July 2022, the Solicitor General determined the position of the United States that, as a result of the decision in *Wooden*, whether a defendant is subject to ACCA, requires in part a jury determination regarding pertinent facts. As the government did not allege or prove such facts to the jury in this case, ACCA cannot apply in this case. That reduces the maximum statutory penalty in this case to 10 years.[1] (This guidance, however, generally does not apply to direct appeal, habeas, or other collateral attack cases.)

ACCA applies and increases the statutory penalties for an 18 U.S.C. § 922(g) offense where the defendant "has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions

---

[1] The current procedural stage of this litigation makes all the difference for Zamichieli. On appeal, the government had strong arguments for why the previous judgment and sentence—that included an ACCA enhancement—should be affirmed. And the Solicitor General permitted such arguments notwithstanding its direction that, pre-sentencing, the government must concede that ACCA does not apply for a defendant not yet sentenced unless the ACCA-related facts were charged in an indictment or information, and either a jury found or a defendant admitted to those facts. But now that the Third Circuit has vacated Zamichieli's judgement and conviction, the government can no longer seek an ACCA enhancement.

different from one another." 18 U.S.C. § 924(e)(1). In *Wooden*, 142 S. Ct. 1063, the Supreme Court held that ten burglaries committed over the course of a single night in adjoining storage units were not "committed on occasions different from one another" under ACCA. In so holding, the Supreme Court rejected a rule that offenses committed sequentially necessarily occur on different occasions. Instead, the Supreme Court held that the different-occasions inquiry "is more multi-factored in nature": "Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion." *Wooden*, 142 S. Ct. at 1070-71.

The Supreme Court specifically declined to address "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion" because "Wooden did not raise [that issue]." *Id*. at 1068 n.3; *see id*. at 1087 n.7 (Gorsuch, J., concurring in the judgment).

Before *Wooden*, the government consistently argued, and appellate courts uniformly agreed, that pursuant to *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), sentencing judges may determine whether a defendant has committed three or more predicate felonies on "occasions different from one another" under ACCA. *See United States v. Blair*, 734 F.3d 218, 226-29 (3d Cir. 2013) (agreeing with that conclusion). In *Almendarez-Torres*, the Court held that

"the fact of a prior conviction" presents a "narrow exception" to the general requirement that, under the Sixth Amendment, a jury must find beyond a reasonable doubt any fact that increases either the statutory maximum or minimum punishment. *Alleyne v. United States*, 570 U.S. 99, 111 n.1 (2013); *see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The government contended that a sentencing court's authority under *Almendarez-Torres* to determine the fact of a prior conviction extends to the determination of when a defendant's prior offenses occurred, and whether they occurred on separate occasions.

Presently, in light of the "multi-factored" and "holistic" inquiry now required by *Wooden*, 142 S. Ct. at 1070-71, the government must now plead and prove to a jury (or a defendant must admit) that a defendant's ACCA predicates were committed on occasions different from one another. Although *Almendarez-Torres* permits a sentencing judge to find the fact of a prior conviction, including the elements of the offense, it has prohibited a judge from finding non-elemental facts about a prior conviction. *See, e.g., Descamps v. United States*, 570 U.S. 254, 270 (2013) ("[T]he court did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence."). Such non-elemental facts are precisely what a sentencing judge would need to find under the different-occasions inquiry now required by *Wooden*. Indeed, the Court in *Wooden* specifically explained that, when conducting the different-occasions inquiry, "[t]iming of course matters, though not in the split second, elements-based way the Government proposes." *Id*. at 1070 (emphasis added).

Accordingly, going forward, where the government seeks imposition of an ACCA sentence, it will charge the pertinent facts in an indictment, and seek either a jury verdict or defendant admission regarding those facts. And in this case, where that did not occur, ACCA should not apply, and the maximum sentence for the defendant's 922(g) offense should be set at

10 years, without any mandatory minimum term. Having said that, this Court continues to have the discretion to impose any sentence it deems warranted within the statutory maximum while applying the applicable sentencing factors.

Given that Zamichieli has plainly served a sentence slightly in excess of ten years' imprisonment, the Court does not have the ability to sentence Zamichieli to an additional term of incarceration. There is no doubt that Zamichieli is benefitting from the fortuity that Wooden was decided after he was convicted and now (because of the remand) before he was sentenced. This fortuity reduced his maximum sentence from life (and eliminating the mandatory minimum of 15 years) because the government was not aware of the requirement that the jury find the qualifying facts. The government believes a sentence of 10 years imprisonment and 3 years of supervised release is appropriate, including in light of the fortuity of the government's concession on ACCA.

**B.** **SENTENCING CALCULATION**

    **1.** **Statutory Maximum Sentence**

The statutory maximum penalty for Zamichieli's violation of 18 U.S.C. § 922(g)(1) is 10 years imprisonment, a period of supervised release of not more than 3 years, a $250,000 fine, and a $100 special assessment.

    **2.** **Sentencing Guidelines Calculation**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: a total offense level of 26 and a criminal history category of IV, which translates into a guideline imprisonment range of between 92 months to 115 months imprisonment.

## C. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one above the advisory guideline range.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

1. **Consideration of the 3553(a) Factors.**

    a. **Nature and Circumstances of the Offense.**

Zamichieli's offense was very serious. While detained in the Federal Detention Center on his 2011 federal gun charge, he directed his girlfriend to complete a prearranged sale of a second loaded gun to a crack dealer. This conviction is the defendant's second firearms conviction, and his third charged possession of a firearm. The defendant committed this brazen offense with full knowledge of the seriousness of his actions.

    b. **History and Characteristics of the Defendant.**

As detailed in the final PSR, Zamichieli has multiple firearms and drug trafficking convictions. Clearly his earlier sentences—ranging from several days to ten years in prison—did not prompt him to change his behavior. Zamichieli also has a history of probation violations and of driving while intoxicated. This criminal history demonstrates that Zamichieli has little or no respect for the law or the safety of the community.  The fact that Zamichieli committed this offense while incarcerated demonstrates his unwillingness and perhaps his inability to conform his conduct to societal norms.

    c. **Other § 3553(a) Factors**

Other § 3553(a) factors also suggest an above guidelines sentence is appropriate in this case.  For instance, a significant punishment is needed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense—particularly where Zamichieli is benefiting from a change in the law and the government's concession. Zamichieli, a dangerous felon, sold a (stolen) firearm to a drug dealer—a sale that took place while Zamichieli sat at the BOP on other gun charges. The seriousness of this offense is apparent, and a guidelines sentence would be an appropriate punishment under the facts of this case.  Further, a

significant sentence would provide some modicum of specific and general deterrence. Whether Zamichieli will change his life when he reenters society is unknown, but he will know that possessing a firearm as a felon with his criminal history comes with severe consequences whether he is charged and convicted under ACCA or not.

**D.** **CONCLUSION**

For these reasons, the government recommends an above guidelines sentence of 120 months imprisonment and 3 years supervised release.[2]

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s Kevin Jayne*
KEVIN JAYNE
Assistant United States Attorney

---

[2] The government moves at sentencing that the forfeiture count in the indictment be dismissed, as the firearm charged in this case has already been forfeited through administrative forfeiture. Therefore there is no need to proceed with judicial forfeiture.

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on standby defense counsel through the Electronic Case Filing (ECF) system:

Julie A. McGrain
Assistant Federal Public Defender

/s Kevin Jayne
KEVIN JAYNE
Assistant United States Attorney

DATED: March 28, 2023.